**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| ROCCO FUNARI, § | | |
| TDCJ #1027893, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | | Civil No. 7:12-CV-011-O-KA |
| § | | |
| WARDEN of the James V. Allred Unit, § | | |
|     et al, § | | |
|     Defendants. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**

This matter comes before the undersigned Magistrate Judge pursuant to the District Court's Order of Reference. Docket No. 29. Plaintiff, an inmate confined in the Allred Unit of the Texas Department of Criminal Justice in Iowa Park, Texas, brings this action pursuant to 42 U.S.C. § 1983 against the warden of the Allred Unit and correctional officer George Wheeler, each in their individual and official capacities. Plaintiff alleges that Defendant Wheeler used excessive force against him causing physical injury during a use-of-force extraction of Plaintiff from his cell. Plaintiff sought to proceed *in forma pauperis*.

Considering Plaintiff's complaint on his motion to proceed *in forma pauperis*, the District Court determined that it was frivolous and dismissed it accordingly as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Docket Nos. 11 and 12. Upon receipt of a Motion to Reconsider, the District Court re-opened the case and directed the Attorney General of the State of Texas to file a Martinez Report[1] (Docket No. 15) and affording the Plaintiff 20 days to file a response. The Martinez Report (Docket Nos. 22-26) was filed January 21, 2014 and Petitioner has filed his Responses (Docket Nos. 31-33).

---

[1]     Pursuant to Martinez v. Aaron, 570 F.2d 317 (5th Cir. 1978)

1

Plaintiff's Claims

By his Complaint and Response to the Martinez Report, Funari has asserted an "excessive force" claim against two individuals identified as the Warden of the James Allred Unit of the Texas Department of Corrections and a correctional officer named George Wheeler. Funari sued each in their individual as well as their official capacities. Funari claims that during a "use-of-force" incident on May 28, 2010, CO George Wheeler unnecessarily kneed Funari in his left eye area with his knee pads causing a black eye and bloody nose injury. He claims the kneeing by Wheeler during the use-of-force incident was made in retaliation for his refusal a second time to attend a court proceeding. He seeks monetary damages from Wheeler for the kneeing action and from the Warden for his failure to prevent predictable uses of excessive force by correction officers under his supervision.

Martinez Report

A review of the Martinez Report shows that a use-of-force incident was initiated by the Plaintiff by his refusal, on this second occasion, to voluntarily attend a scheduled court appearance/hearing. Plaintiff had an extensive prior history of confrontation, often with violence, with and toward correction officers. To secure his mandated presence before the court, the officers determined that it was necessary to perform a strip search of plaintiff for any weapons and to physically remove the plaintiff from his cell and physically deliver him to court. For that purpose and to protect themselves from any potential injury to themselves or to the plaintiff himself, they assembled a five-man team of correction officers wearing protective gear and carrying protective shields to perform a use-of-force extraction of Funari from his cell. Accompanied by a video camera officer, the team approached the plaintiff's cell and ordered him repeatedly to comply with their necessary directives and commands. Plaintiff defiantly refused to comply.

### Use of Force-Excessiveness Standard

"To prevail on an eighth amendment excessive force claim, a plaintiff must establish that force was not 'applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm' and that he suffered an injury." *Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

### Qualified Immunity Standard

Correctional Officers, while acting within the scope of their employment, are often entitled to qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Scott v. Harris*, 550 U.S. 372, 376 citing Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). Furthermore, the Court has stated, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* citing Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (per curiam)...In resolving questions of qualified immunity, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Id.* citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

### Evidentiary Effect of Video

Generally, evidence must be viewed in the light most favorable to the plaintiff if there is a *genuine* dispute as to the facts; however, Funari's version of events was contradicted by a videotape of the relevant events. In *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) the Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. The court could instead rely

on the videotape of the events in evaluating the motion for summary judgment rather than the "visible fiction" offered by the non-moving party. *Id*. at 381. The same evidentiary weight applies when the court is determining whether the plaintiff can overcome a plea of qualified immunity by a correction officer at the pleading stage before discovery or other court proceedings or if the court is evaluating the case for frivolousness under 28 U.S.C. § 1915(e)(2)(B)(i).

Fact Findings

On my review of the video of the use-of-force incident I find that the officers involved in the use-of-force incident used no more physical force than was reasonably necessary to secure compliance with the justified orders, directives, instructions given by them to the plaintiff. I find that Plaintiff was afforded more than ample opportunities to comply with the orders, but defiantly refused. The striking that caused the injury to Plaintiff's eyebrow and nose occurred while the team was seeking to secure his compliance with the directive to place his hands/arms in position for the officers to place restraints (handcuffs) on them. Given the multiple opportunities to so comply, Plaintiff defiantly refused. He does not claim he could not hear the commands to present his hands for cuffing. He does not claim that he could not physically so comply. He certainly was not asking to be let up so he could tender his hands and arms. It was his own refusal to present his arms/hands for the application of the cuffs that caused Officer George Wheeler to strike plaintiff with his knee pads. Given the prior history of this offender in initiating confrontations of all kinds with the correction officers, the team and each member of the team were justifiably apprehensive concerning their own physical safety in those cramped quarters. Apart from the application of some kind of pain-causing force, there were no other means of securing voluntary compliance by the plaintiff.

While it is unfortunate that the situation escalated to the point that force was used, Plaintiff cannot prevail on this claim. In situations such as this, "[prison officials] are entitled to wide-ranging deference." *See Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) (finding that the use

4

of mace to quell a disturbance caused by inmates on a bus did not constitute excessive force). "The amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed." *Id.* (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). The use of force does not constitute cruel and unusual punishment when reasonably necessary to subdue a recalcitrant prisoner. *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975); *see Williams v. Hoyt*, 556 F.2d 1336, 1339-40 (5th Cir. 1977) (affirming jury verdict for the defendants where evidence was sufficient to show that mace was used only for the control of unruly prisoners and was, therefore, not excessive).

     Plaintiff presents no facts which could show that the use of force team applied force maliciously and sadistically in an effort to cause him harm. Plaintiff concedes that he engaged in resistance to the efforts of the prison guards in their attempts to conduct the strip search and to transport him to the court. Rather, according to Plaintiff's own account of the incident, force was used to restore order and enforce his compliance with directives from prison officials. I find that there is no question that under the circumstances as reflected in the video and by the unchallenged background information in the Martinez Report, the amount of force applied by Officer Wheeler was no more than was reasonably necessary to secure Plaintiff's compliance with the justified and authorized directives of the correction officers to present his hand and arms for application of restraints that were clearly necessary to maintain order and discipline so that the officers could safely deliver plaintiff to the court for a hearing. Plaintiff has presented no facts from which this court can conclude that Officer Wheeler applied more force than was reasonably necessary or that the force he used was applied either maliciously or sadistically to cause plaintiff harm. If duly raised by Wheeler in an answer to Funari's complaint, a plea of qualified immunity would conclusively be granted. No judge or jury would find or conclude otherwise.

Finally, Plaintiff has neither alleged nor shown facts whatsoever to support any claim against the Warden in his official or individual capacities.

## Recommendation

Accordingly, based upon the foregoing and on the grounds and under the authorities set forth in the District Court's prior Order Dismissing Case, I recommend that the District Court dismiss Plaintiff's Complaint with prejudice.

## Standard Instruction to Litigants

A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

It is so ORDERED, this 3rd day of March, 2014.

*[signature: Robert K. Roach]*

Robert K. Roach
UNITED STATES MAGISTRATE JUDGE